# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Docket No. 95-cr-101 (NAM)** |
| | ) | |
| **TOMMY WALKER III,** | ) | |
| | ) | |
| *Defendant.* | | |

## MOTION TO REDUCE SENTENCE
## PURSUANT TO THE FIRST STEP ACT OF 2018

The defendant, Tommy Walker, III, by and through counsel, respectfully moves this Court pursuant to Section 404 of the First Step Act of 2018 for an order reducing his sentence pursuant to section 404 of the First Step Act.  Mr. Walker has been imprisoned since March 21, 1995, over 297 months or almost 25 years.

## I.      Preliminary Statement

On February 12, 1997 Tommy Walker, III  was sentenced to life imprisonment  on each of Counts 1, 16, and 18; a term of 120 months on each of Counts 3, 4, 5, and 6; a term of 240 months on each of Counts 7, 8, 9, and 17; a term of 480 months on each of Counts 10, 11, and 12; and a term of 60 months on Count 26; all to be served concurrently. *Exhibit 1,* ECF No. 367, *Judgment*. No sentence was imposed on Count 2.  Mr. Walker was convicted and sentenced pursuant to a federal sentencing scheme that, according to the U.S. Sentencing Commission, "undermine[d] the various congressional objectives set forth in the Sentencing Reform Act" by imposing overly harsh punishments, primarily on minorities, in a manner that "overstated the seriousness of most crack cocaine offenses and fail[ed] to provide adequate proportionality."  U.S. Sentencing Comm'n, Report to the Congress: Cocaine and Federal Sentencing Policy at 8 (2007).[1]

---

[1] Available at: https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/drug-topics/200705_RtC_Cocaine_Sentencing_Policy.pdf.

Sentenced to life imprisonment at age 40, Mr. Walker is now 62 years old and has served almost 25 years in federal prison for his involvement in an enterprise that conspired to distribute cocaine base, cocaine, methamphetamine, and marijuana. "[W]ith the passage of the First Step Act of 2018, [however] . . . [t]his Court now has the authority to reduce this man's sentence to remove the unfair and unjust life sentence that was required to be imposed." *United States v. Powell*, 360 F.Supp.3d 134, 138 (N.D.N.Y., Mar. 14, 2019). In light of the circumstances of this case, the Court should exercise its discretion pursuant to the First Step Act of 2018 and reduce Mr. Walker's sentence.

## II.      Procedural Background

Mr. Walker was charged in a multi-defendant and multi-count superseding indictment filed October 19, 1995. *Exhibit 2*, ECF No. 94, *Superseding Indictment*.[2] In this indictment, Mr. Walker was charged in sixteen counts of the twenty-seven count superseding indictment. The "Introduction" to the indictment advised that the criminal organization underlying the enterprise and conspiracy constituted a "Continuing Criminal Enterprise" under 18 U.S.C. §848(c) as a "group of individuals who occupied positions as organizers, supervisors and managers who generated substantial income and resources by committing a felony drug offense pursuant to Title 21 of the United States Code which was part of a continuing series of such offenses undertaken in concert with five or more persons." *Ex. 2.* at 2, ¶A1.  The principal purpose of the organization was to "generate money through the distribution of cocaine, cocaine base (CRACK), methamphetamine (ICE), and marijuana." *Ex. 2* at 2, ¶B.  More specifically Mr. Walker was charged in,

- Count 1: engaging in a Continuing Criminal Enterprise with Prentis Lindsey from 1991 to March 21, 1995, committing violations of  21 U.S.C.§§ 84l(a)(l) and 846 and 18 U.S.C. §

---

[2] The superseding indictment remains sealed but is available to the court via CM-ECF.

922 which were part of a continuing series of violations of these statutes undertaken by
them in concert with 5 or more other persons with respect to whom the defendants occupied
a position of organizer, supervisor or manager, and from which violations, they obtained
substantial income and resources.

- Count 2:  from 1991 until March 21, 1995, the defendant, Prentis Lindsey, Kevin Watson, Jorge Pasqual, Henry O. Felton, Andre Galloway, two male juveniles, Raymond Cobbs, Cynthia Chaney, Lorraine Howard, Melvina Bennett, Gary Miller, George Belgrove, Gregory Leon Whitehurst, David Kyles, and others, conspired to possess with intent to distribute and to distribute cocaine, cocaine base, and methamphetamine, and marijuana.[3]

- Counts 3 through 6: on different dates, Walker, having been convicted of a crime punishable by imprisonment exceeding one year, a conviction for Criminal Possession of a Weapon in the Third Degree, in Oneida County Court on September 6, 1989, possessed various firearms transported in interstate or foreign commerce.

- Count 7: on November 2, 1994, Walker and Tracy Blackwell, aided and abetted each other, in possession with intent to distribute methamphetamine.

- Counts 8 and 9: on November 9, 1994, Walker possessed with intent to distribute cocaine base.

- Counts 10 and 11: on November 15, 1994, Walker possessed with intent to distribute cocaine (Count 10) and methamphetamine (Count 11).

- Count 12 charges on December 27, 1994, Walker possessed with intent to distribute cocaine base.

- Counts 16, 17, and 18: on March 21, 1995, Walker, Gary Miller, and Tracy Blackwell aided and abetted each other, in possession with intent to distribute cocaine base (Count 16), cocaine (Count 17), and cocaine base (Count 18).

- Count 26: from October 1993 until December 1994, Walker and Prentis Lindsey conspired to possess and deal in firearms which had been purchased illegally and which had been transported in interstate or foreign commerce, and to make false statements in the purchase of firearms from a licensed firearms dealer.

Mr. Walker pled not guilty and a jury trial commenced on May 9, 1996.  On July 2, 1996,

Mr. Walker was found guilty of fourteen charges. Count 1 – aiding and abetting a continuing

criminal enterprise by (a) committing a continuing series of violations of  21 U.S.C. §§ 841 and

---

[3] Counts 1 and 2 incorporated and re-alleged paragraphs A-D of the introduction of the indictment as though fully set forth in each of Counts 1 and 2.  ECF No. 94 at 7-8.

3

846, (b) that were part of a continuing series of violations; (c) that Mr.Walker occupied a position of organizer, supervisor, and manager; (d) with respect to five or more other persons; and (e) that he made substantial amounts of money.  The jury also found Walker guilty of Count 2 conspiracy to possess with intent to distribute and distribution of cocaine, cocaine base, and methamphetamine, and marijuana; violations of 21 U.S.C. § 841 as alleged in Counts 7 through 12; 16 through 18 and Counts 3 through 6 charging firearms offenses.

According to the Presentence Report ("PSR") Mr. Walker faced the following mandatory penalties: (1) Life for Count 1, pursuant to 848(b); a minimum of 10 years with a maximum of Life for Count 2 pursuant to 21 U.S.C. §841 (b)(1)(A); a maximum of 10 years for Counts 3-6 pursuant to 18 U.S.C. §§ 922 (g)(1) and 924 (a)(1); a maximum of 20 years for Counts 7-9 and 17 pursuant to 21 U.S.C. §841(b)(1)(C); a minimum of 5 years with a maximum of 40 years for Counts 10-12 pursuant to 21 U.S.C. §841(b)(1)(B); and a minimum term of 10 years with a maximum of Life for Counts 16 and 18 pursuant to 21 U.S.C. §(b)(1)(A). PSR at 15-16 ¶50.

Mr. Walker's then mandatory sentencing guideline range was also life imprisonment. The PSR grouped Counts l, 2, 7-12, and 16-18. PSR at 10, ¶21 ("drug distribution counts are groupable under U.S.S.G. § 3Dl.2(d).")  Id. Counts 3-6 and 26, offenses involving firearms were also groupable under U.S.S.G. § 3Dl.2(d). Id. Application of U.S.S.G. §2X1.1 resulted in a higher offense level than the application of 2K2.1 applicable to the firearms offenses, as calculated under 2D1.5. Thus, the drug distribution and firearms offenses became groupable under U.S.S.G. §3D1.2(a) "because the cross-reference results in the application of U.S.S.G. §2D1.5 to all counts." Id.

The guideline range was 360 months to Life pursuant to U.S.S.G. §2D1.5 based on a total offense level of 42 with a criminal history category III. PSR at 16, ¶51.  However because the minimum statutory sentence was greater than the maximum of the guideline range the statutory

sentence of Life became the guidelines range.  Id.  On June 20, 1997, the Court conducted a

sentencing hearing. *Exhibit 3,* ECF No. 445*, Sentencing Transcript.* Mr. Walker was sentenced to

a term of Life on Counts 1, 16, and 18; a term of 120 months on Counts 3-6; a term of 240 months

on Counts 7-9 and 17; a term of 480 months on Counts 10-12; and a term of 60 months on Count

26. *Ex.1* at 2. [4] All sentences were to be served concurrently.[5]  Noting the irony, the court also

imposed a 5- year term of supervised release on Counts 1, 10 through 12, 16 and 18 and a 3-year

term on Counts 3 through 9, 17 and 26.

On January 5, 2016, Mr. Walker filed a motion for a reduction in his sentence pursuant to

18 U.S.C. § 3582(c)(2) based on amendments to the crack cocaine sentencing guidelines.  ECF

No. 589. The Court denied his motion and motion to reconsider because his sentence was based

upon the statutory sentence of Life. ECF No. 603.

## III.    The First Step Act: Background and Requirements

On December 21, 2018, the First Step Act of 2018 was enacted into law. *See* First Step Act

of 2018, Pub. L. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018).  Section 404 of this new law makes

the Fair Sentencing Act of 2010 (2010 FSA) retroactively applicable to defendants who were

convicted of offenses whose statutory ranges were subsequently altered by the 2010 FSA. That

law altered the mandatory minimum penalties applicable to crack cocaine offenses by increasing

the quantities of crack required to trigger the 5-year and 10-year minimum sentences. More

specifically, Congress increased the quantity triggering the 5-year minimum in 21 U.S.C.

§ 841(b)(1)(B) from 5 grams to 28 grams, and the quantity triggering the 10-year minimum in

---

[4] Because the punishment under the then mandatory guidelines was Life on Count 1, the court apparently imposed the maximum punishment under the guidelines' multiple count rules that required the district court to "formally" impose the statutory maximum on the remaining counts. *See* U.S.S.G. § 5G1.2, comment. (n.1); *id.* §§ 5G1.2(b), 5G1.2(c), 5G1.1(a).
[5] No sentence was imposed on Count 2.

§ 841(b)(1)(A) from 50 grams to 280 grams (thus, the quantity for the catch-all provision in § 841(b)(1)(C) was increased from amounts under 5 grams to amounts under 28 grams). *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010).

**A. The 2010 Fair Sentencing Act modified the statutory penalties for cocaine base trafficking offenses under both 21 U.S.C. § 841 and CCE violations of 21 U.S.C. § 848.**

Section 404(b) of the First Step Act of 2018 provides that defendants convicted of an offense in which the statutory penalties were subsequently modified by the 2010 FSA may move for a reduced sentence. First Step Act § 404(b). Specifically, the section provides that in the cases for defendants previously sentenced,

> [a] court that imposed a sentence for a covered offense may, on motion of the defendant . . . , impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

First Step Act § 404(b).

Section 404 defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111- 220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404(a). Section 2 of the Fair Sentencing Act, entitled "Cocaine Sentencing Disparity Reduction," struck the words "50 grams" in 21 U.S.C. § 841(b)(1)(A), and "5 grams" in 21 U.S.C. § 841(b)(1)(B), and replaced those weights with "280 grams" and "28 grams" respectively. The Fair Sentencing Act thereby modified the quantities of cocaine base triggering all three penalty provisions of 21 U.S.C. § 841(b)(1).

The impact of section 2 of the 2010 FSA was not limited to 21 U.S.C. § 841 (and the import and export provisions in 21 U.S.C. § 960, which were similarly amended), though. Statutes whose penalty provisions incorporate by reference the cocaine base quantities contained within §841

Likewise were modified by the 2010 FSA.[6]  Indeed, the penalty provision under the Continuing Criminal Enterprise statute requires, in order to impose a mandatory life sentence, proof that the violation "involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)." 21 U.S.C. § 848(b)(2)(A).  Following the 2010 FSA, the quantity of cocaine base required to satisfy that provision increased from 1.5 kg to 8.4 kg.  Likewise, conviction under § 848(c) requires proof of a "continuing series of violations" that, if based on violations of 21 U.S.C. §841 involving cocaine base, thereby reference and incorporate provisions that were modified by the 2010 FSA. Finally, the CCE statute's death penalty provision, §848(e), requires proof of a violation of §841(b)(1)(A) or §960(b)(1), which—if the offense involves the distribution of cocaine base—was also modified by the 2010 FSA.

In sum, the statutory penalties for CCE are tied to and incorporate by reference the statutory provisions that were "modified by section 2 or 3 of the Fair Sentencing Act." Accordingly, §848 is a "Federal criminal statute" in which the "statutory penalties . . . were modified by section 2" of the Fair Sentencing Act, and it thus constitutes a "covered offense" for purposes of the First Step Act.

Mr. Walker was convicted of violating eight "[f]ederal criminal statute[s], the statutory penalties for which were modified by section 2 . . . of the Fair Sentencing Act"; namely, the statutes alleged to have been violated in Counts 1, 2, 8, 9, 10, 12, 16, and 18 of the indictment. As a result, the First Step Act authorizes this Court to "impose a reduced sentence as if section[] 2 . . . of the Fair Sentencing Act" was "in effect at the time th[ose] covered offense[s] w[ere] committed." First Step Act § 404(b).

---

[6] For example violations of 18 U.S.C. §§1962(d) and 1963 alleging RICO violations or RICO conspiracies qualify as covered offenses as recently conceded by the government in an appeal before the Fourth Circuit in *United States v. Maupin*, No. 19-6817, ECF No. 26, United States Motion to Remand.

### B. The extent of any reduction in sentence is committed to this Court's discretion, subject to the mandatory penalties otherwise applicable to Mr. Walker's charges.

Section 404 expressly permits a court to "*impose* a reduced sentence" "as if" the Fair Sentencing Act "were in effect."  First Step Act § 404(b) (emphasis added).  It places no other limit on the extent to which the court may reduce a sentence, and places no restriction at all on what the court may consider in imposing a reduced sentence.[7]  Furthermore, under the current state of the law, the Court has the authority to impose a reduced sentence that is below the now-advisory guideline range.  *See United States v. Booker*, 543 U.S. 220 (2005); *see also Kimbrough v. United States*, 552 U.S. 85 (2007) (clarifying that the Guidelines are constitutional only if advisory).

The First Step Act authorizes the Court to reopen previously-final judgments and impose reduced sentences on those convictions that resulted from "covered offenses" – statutes whose penalty provisions were modified by the 2010 Fair Sentencing Act.  The extent of that reduction is committed to this Court's discretion. First Step Act § 404(b) (stating that court "may, on motion of the defendant . . . impose a reduced sentence"); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("The word 'may' clearly connotes discretion."); *cf. Lopez v. Davis*, 531 U.S. 230, 241 (2001) (explaining that the discretionary nature of the "permissive 'may'" is particularly apparent where Congress uses the "mandatory 'shall'" in very the same section"); First Step Act § 404(c) ("No court shall entertain a motion . . . if the sentence was previously imposed or previously reduced in accordance with" the 2010 Fair Sentencing Act amendments).

In deciding whether and how much to reduce such sentences, "a mandatory [guideline]

---

[7] As a general rule, a court may not modify a term of imprisonment once it has been imposed.  *See* 18 U.S.C. § 3582(c).  Section 404 provides an exception to that rule, as it falls within § 3582(c)(1)(B), which authorizes the court to "modify an imposed term of imprisonment to the extent otherwise *expressly permitted by statute* or by Rule 35 of the Federal Rules of Criminal Procedure." Consequently, the relief requested in this memorandum is based on the authority provided by § 404(b); the court is authorized to impose a reduced sentence as expressly permitted by that provision pursuant to § 3582(c)(1)(B); and the court is not constrained in any way by the limitations on sentence reductions set out in § 3582(c)(1)(A) or § 3582(c)(2).

system is no longer an open choice" by which to constrain this Court's discretionary authority. *Booker*, 543 U.S. at 263. In other words, "the imposition of a sentence under the former mandatory guidelines regime rather than under the advisory regime outlined in *Booker* is error." *United States v. White*, 405 F.3d 208, 216-17 (4th Cir. 2005). That is why the Supreme Court in *Pepper v. United States*, 562 U.S. 476, 494 (2011), struck down a statute that precluded courts "from imposing a sentence outside the Guidelines range" on resentencing following an appeal. *Id.*

The fact that the imposition of reduced sentences pursuant to the First Step Act are not subject to the constraints of 18 U.S.C. § 3582(c)(2), and U.S.S.G. § 1B1.10(b)(2), which explicitly prohibit reductions that are "less than the minimum of the amended guideline range," make plain that no such limitation applies to First Step Act motions. *See United States v. Robinson*, 2019 WL 3867042 *4 (D. Md. August 15, 2019) (quoting *United States v. Triestman*, 178 F.3d 624, 629 (2d Cir. 1999) in finding the language in §404 provides an "express grant of remedial power,"… , empowering a court to modify a defendant's sentence pursuant to Section 3582(c)(1)(B)). Had Congress intended to limit this Court's discretion to reduce Mr. Walker's sentence below the advisory guideline range, it easily could have done so by including specific limiting language in the First Step Act. But it did not. Consequently, this Court's discretion is limited solely by the statutory mandatory minimums and maximums that would have applied to Mr. Walker's charges "as if" they were subject to the 2010 Fair Sentencing Act.

If the Fair Sentencing Act had been "in effect" at the time Mr. Walker was charged, Counts 16 and 18 of the indictment would have alleged a violation of 21 U.S.C. § 841(b)(1)(C), not §841(b)(1)(A*). See e.g*., *United States v. Cannady*, 283 F.3d 641, 647 (4th Cir. 2002)("[U]nless the quantity of drugs is alleged in the indictment and submitted to the jury, the defendant may be convicted only under 21 U.S.C.A. § 841(b)(1)(C) (West Supp.2001), which governs offenses

9

involving an unspecified quantity of drugs and sets forth a maximum sentence of twenty years." ).

In another pre-*Apprendi* case involving a 10-year mandatory minimum under § 841(b)(1)(A), the

court stated that "[b]ecause the jury made no finding as to the specific drug amount, subsequent

Supreme Court precedent requires that defendant cannot be responsible for more than 50 grams."

*United States v. Pugh*, 2019 WL 1331684, at *3 (N.D. Ohio Mar. 25, 2019) (No. 5:95-cr-145).

Based on this the court concluded in *Pugh* that "under the Fair Sentencing Act, defendant's

statutory penalty is now five to forty years." Id. Pursuant to the First Step Act, Mr. Walker is

eligible for a reduction in his sentence.

Simply put, to be eligible for a discretionary sentencing reduction, Mr. Walker need meet

only three requirements: (1) he was convicted of a covered offense committed before August 3,

2010; (2) he was sentenced pursuant to the penalties for the covered offense in effect before August

3, 2010; and (3) he has not previously filed a motion pursuant to § 404 that was denied on its merits

after a complete review.  He meets all three of these requirements.

At the time of sentencing, Mr. Walker faced a mandatory life sentence by statute and under

the guidelines for his convictions of Counts 1, 16 and 18. His guidelines were based on over 1.5

kilograms of crack cocaine. *See* PSR at 11,¶ 23. It is not the determination at sentencing that

controls eligibility, it is the statute of conviction and whether the statutory penalties related to that

statute were modified by the Fair Sentencing Act.

The quantity of drugs attributed to an individual defendant, "whether such quantity was

charged in the indictment, found by a jury, admitted by the defendant, or determined in a

presentence investigation report," is not relevant to eligibility. *United States v. Pride*, 2019 WL

2435685, at *4 (W.D. Va. June 11, 2019); *see also, e.g.*, *United States v. Bean*, 2019 WL 2537435,

*4 (W.D. Mich. June 20, 2019) ("the quantity of narcotics (whether admitted, found by a jury, or

found by a court) [does] not factor into the question of eligibility"); *United States v. Askins*, 2019

10

WL 3800227, *3-4 (D. Ariz. Aug. 6., 2019) ("The Court agrees" that "'[q]uantity is simply not part of the statutory test for eligibility under the First Step Act'")   In *United States v. Davis*, the court rejected the government's argument that because the defendant's actual offense conduct involved at least 1.5 kilograms but less than 8.4 kilograms of cocaine base, he was not eligible for relief under the First Step Act. 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019). The court stated "[t]his argument is not persuasive … *because it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act*." *Id.* (emphasis added).

Under the Fair Sentencing Act, Mr. Walker's guideline range is lower. At the time of Mr. Walker's trial, the government was not required to prove to the jury that Mr. Walker distributed and/or possessed with intent to distribute specific quantities of drugs. Consequently, at most, the jury found that Mr. Walker distributed and/or possessed with intent to distribute an unspecified amount of cocaine base along with cocaine and methamphetamine. Today, the amount of crack cocaine relied upon for sentencing in the PSR, 1.5 kilograms, results in a base offense level of 30.  Because the level is lower than the higher alternative base offense level under U.S.S.G. §2D1.5, the total offense level would be 38 with an advisory guideline range of 292 to 365 months for Counts 1, 16 and 18. These ranges are calculated as follows:

<u>Counts 1, 16, and 18</u>

Base offense level = 34 (§2D1.5(a)(1) --4 plus offense level from § 2D1.1 – 30)
Offense Level = 34

Base Offense Level = 38 (the greater applies – see § 2D1.5(a))
Criminal History Category = III
Guideline Range = 292-365 months

The court imposed the maximum statutory sentences for each count. Counts 1, 16 and 18 received a sentence of Life, Counts 8 and 9 received a sentence of 240 months. Counts 10 and 12

received a sentence of 480 months. *Ex. 1* at 2; PSR at 15-16, ¶50.[8]  Those statutory sentences applicable to the statutes of conviction were modified under the Fair Sentencing Act. Counts 1, 8, 9, 10, 12, 16 and 18 are individually eligible for reductions because the statutory sentences for those statutes of conviction were modified by Fair Sentencing Act.

Regardless of the guideline range, as argued above, the Court is not limited to a guideline sentence under the First Step Act.  Under *Booker,* the guidelines are constitutional only if advisory. And the Court must only be bound by the sentencing factors of 18 U.S.C. § 3553(a) and the statutory mandatory minimums and maximums for the offenses of conviction as modified by the Fair Sentencing Act. The Court now has the authority to exercise discretion and impose a sentence guided by 18 U.S.C.  § 3553(a).

At this point, Mr. Walker has been in prison over 25 years of his life. He has not previously moved for a reduced sentence pursuant to the First Step Act of 2018, and has not previously had his sentence reduced as if the Fair Sentencing Act of 2010 applied in his case. And not only is Mr. Walker eligible for relief, but he is deserving of it. He has demonstrated a strong commitment to rehabilitation, self-improvement and assisting others while in the Bureau of Prisons.

## IV.    Post-Sentencing Conduct of Mr. Walker

Mr. Walker is 62 years old and currently an inmate at FMC Devens. *Exhibit 4, BOP Summary Reentry Plan*.  Over the past 25 years in Bureau of Prisons custody, aside from two minor infractions over 16 years ago, Mr. Walker has complied with BOP regulations, the various rules governing the facilities where he was held and BOP employees.  Prior to FMC Devens, Mr. Walker

---

[8] According to relevant portions of PSR ¶50:
the term of imprisonment for Count 1 is Life, pursuant to 21 U.S.C. § 848(b); the maximum term of imprisonment for each of Counts 8 and 9 is 20 years, pursuant to 21 U.S.C. § 841(b)(l)(C);  the minimum term of imprisonment for Counts 10 and 12 is *5* years and the maximum term of imprisonment is 40 years, pursuant to 21 U.S.C. § 841(b)(l)(B); and the minimum term of imprisonment for Counts 16 and 18 is 10 years and the maximum term of imprisonment is life, pursuant to 21 U.S.C. § 84l(b)(l)(A). The maximum term of imprisonment for Count 26, is *5* years, pursuant to 18 U.S.C. § 371.

was incarcerated at USP Lewisburg for 20 years. *Ex. 4* at 3.  In 2009, during Walker's incarceration, Lewisburg was selected to house the most violent and disruptive criminals as a "Special Management Unit."  During that time 200 inmates were selected as a "Working Cadre" to remain in general population. Mr. Walker was one of those selected because he was an individual who was "an excellent role model, show[ed] the best work ethic, and [had] a clear, or limited disciplinary record." *Exhibit 5*, Certificates of Completion, Achievements and Letters in Support, at 1.

Mr. Walker's time in Lewisburg was also focused on his employment in various positions primarily as a clerk in the law library. *Ex.5* at 3-18. He initially worked in the Food Service Department and as Grade #1 electrician.  Both of his supervisors attested to his dependability and work ethic. *Ex. 5* at 17, 18.  Later he dedicated himself to paralegal studies and as a recreational instructor. Ex. 2-16.

Mr. Walker is a student of the law, a teacher, and an advocate for those unable to fully advocate for themselves. Mr. Walker has sought to not only improve himself but assists others in doing the same. Mr. Walker was selected as an instructor in several Adult Continuing Education courses because of his legal research and writing and contributed to positive learning experiences for the inmate population at USP Lewisburg. *Ex. 5* at 7-8, 4.  As noted by Chris Gass, an Education Specialist at USP Lewisburg in a letter commending Walker's efforts and contributions as a legal library clerk for 10 years:

> It is an extremely rare and difficult achievement when a person can accomplish meritorious goals and maintain a path of continuous self improvement inside the environment of a maximum security prison. It is even more unusual when that person also manages to continue his tightly focused regiment for an extended period of time. Consequentially, it is quite possibly the most remarkable of all achievements when that person can remain ceaselessly committed to their own personal ambitions of self-improvement for a period of time that extends into multiple years. In the case of Tommy Walker, he has not only been able maintain this type of uncommon conduct, but he has remained personally committed to improving both his life and the lives of everyone around him for more then 10 years.

13

Over the course of the more then 10 years that Mr. Walker has served as a Legal Library Clerk at the USP Lewisburg, PA Law Library, he has managed to develop an unfathomable knowledge of the criminal legal system, which he uses to serve both the inmate population and Library/Education staff with an exceptional combination of professionalism, patience and courtesy.

*Ex. 5* at 4-6.

Mr. Walker also worked part time for the Recreation Department for over ten years at the same time he was a library clerk. He was selected as the Head League Official for several seasons. *Ex. 5* at 13. He also was a Cycling Instructor. Id. The Recreational Specialist at Lewisburg observed that, Walker's "positive attitude is appreciated and needed in the environment in which he lives and we work. This is what makes him an asset to the department and institution as a whole." Id.

Mr. Walker's positive contributions extend beyond facility-wide programs to focus on helping individuals in the facilities. Not only does Mr. Walker personally have an exceptional behavioral, educational and work record, but he also has a generous nature sharing his educational training and experiences as a mentor and legal assistant to assist fellow inmates. *Ex. 5* at 19-43. As the court will read in the numerous letters submitted by fellow inmates, Mr. Walker has encouraged in their educational pursuits as an instructor and tutor. *Ex. 5* at 18-32; 39-43. His instruction and assistance helped improve outcomes for a number of other inmates.

Mr. Walker is currently employed at FMC Devens as a Hospital Inmate Companion, a job similar to a Certified Nurse's Assistant. *Exhibit 4; Ex. 5* at 2. The program manager recently provided a letter recommending Mr. Walker further pursue certification as a Nurse's Aide due to his excellent work as a companion:

Communication is a key skill required for the job as an inmate companion. Mr. Walker has demonstrated the ability to work with patients suffering from illnesses such as dementia, cancer, mental illness, hospice, new amputees, etc. These inmates are often difficult to manage, however Mr. Walker is able to remain calm and encourages them to participate in their care on a daily basis.

In addition to communicating with his patients, Mr. Walker also has to communicate with

14

Correctional Officers and members of the Medical Staff. He is always pleasant, and appropriate with staff. Mr. Walker does not wait to be told about his daily assigm11ents; he automatically does what is required of him without any issues.

Mr. Walker has done an excellent job as an inmate companion. I would recommend that he continue on this path and attempt to achieve ce1iification as a Nurse's Aide upon release to the community.

*Ex. 5* at 2.  Due to his work ethic at FMC Devens, Mr. Walker was recently selected to take care of the "only" legally blind patient at the institution (24 hours a day/7 days a week).

Mr. Walker was transferred to FMC Devens because of medical conditions involving stage 3 kidney disease and stage 2 heart disease.  He continues to approach his imprisonment in a positive manner even with these medical conditions and the hope of no release. Based upon his medical conditions, his age of 62 years, his educational and vocational training he is an individual viewed by Congress and the Sentencing Commission to present a decreased threat to the public also supporting a reduced sentence. See First Step Act of 2018, § 603. See also United States v. Carter, 2019 WL 24477626 *4 (W.D. Va. June 13, 2019)(" Indeed, Section 603 of the First Step Act reduced the minimum age for consideration as an "elderly" offender eligible to be considered for home confinement from 65 to 60, thereby suggesting that Congress believed offenders aged 60 and over—in general terms, of course—to be less of a threat to the public and to require less deterrence than their younger counterparts." *The Effects of Aging on Recidivism Among Federal Offenders,* United States Sentencing Commission (December 2017) *Offenders* at 30 ("The pattern is consistent across age groups, as age increases recidivism by any measure declined.").

In sum, Mr. Walker has transformed and has been rehabilitated such that he is ready to re-join society as a productive and law-abiding member.

## V.     Request for Hearing

### A.     Section 404 authorizes a resentencing hearing.

Mr. Walker respectfully requests a re-sentencing hearing. Section 404 expressly permits a

15

court to "*impose* a reduced sentence" "as if" the Fair Sentencing Act "were in effect." First Step

Act of 2018, Pub. L. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018) (emphasis added). It places

no other limit on the extent to which the court may reduce a sentence, and places no restriction at

all on what the court may consider in imposing a reduced sentence. Section 404 also gives the

court discretion to deny a motion of a defendant who is eligible and whose sentence is not already

fully in accordance with the Fair Sentencing Act, so long as the court denies the motion "after a

complete review . . . on the merits." *See* First Step Act of 2018, § 404(c). Under these

circumstances, there must be a hearing at which the defendant is present. *See, e.g.*, *United States*

*v. Brown*, 879 F.3d 1231, 1237-41 (11th Cir. 2018); *United States v. Faulks*, 201 F.3d 208,  210-

12 (3d Cir. 2000); *United States v. Moree*, 928 F.2d 654, 655-56 (5th Cir. 1991).

Unlike § 3582(c)(1)(A) and (c)(2), § 404(b) contains no reference to policy statements

issued by the Sentencing Commission (and nor does § 3582(c)(1)(B)).  Unlike 28 U.S.C. §§ 994(t)

and (u), no statute empowers the Commission to issue policy statements dictating the

circumstances or by what amount a sentence may be reduced. In other words, no statutory language

or sentencing provision provides that § 404 proceedings "do not constitute a full resentencing," or

that the court "shall substitute only" the Fair Sentencing amendments. *Compare* U.S.S.G. §§

1B1.10(a)(3), (b)(1).

Section 404(b) also gives the court jurisdiction to "*impose* a reduced sentence." (emphasis

added). Congress' choice of the word "impose" rather than "modify" is significant. Federal

sentencing statutes use the word "impose" to mean "sentence." 18 U.S.C. § 3553(a) ("The court shall

impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

paragraph (2) of this subsection."); § 3553(a)(2) (directing courts to consider "the need for the

sentence imposed" in light of specified purposes of punishment); § 3553(b)(1)  (same); §

3553(b)(2)(iii) ("the court shall impose an appropriate sentence, having due regard for the purposes

set forth in subsection (a)(2)."); § 3553(c) (same) ("Statement of Reasons for Imposing a Sentence. The court, at the time of sentencing, shall state in open court the reasons for its imposition of a particular sentence."); § 3553(e) (same)); 18 U.S.C. § 3554 ("The court, in imposing a sentence on a defendant who has been found guilty of an offense"); 18 U.S.C. § 3555 (same); 18 U.S.C. § 3557 (same). Because "identical words in different parts of the same act are intended to have the same meaning," the Court should construe the First Step Act's use of the term "impose" to direct a re-sentencing. *Department of Revenue of Oregon v. ACF Industries, Inc.,* 510 U.S. 332, 342 (1994); *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986); *see also* Fed. Crim. P. 32(b)(1) (using term "impose").

Cases addressing § 3582(c)(2) and Rule 35(b) demonstrate that §404 authorizes a resentencing.   In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court held that § 3582(c)(2) does not authorize a "resentencing proceeding" for reasons that do not exist here. Section 3582(c)(2) authorizes a reduced sentence only if "consistent" with the Commission's policy statements, and 28 U.S.C. § 994(u) in turn authorizes the Commission to determine "in what circumstances and by what amount" sentences may be reduced. *Id.* at 819-22. "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id.* at 826. It permits courts to reduce a sentence only "in circumstances specified by the Commission," *id*. at 825, and also "constrain[s]" the courts' power through Commission "statements dictating 'by what amount' the sentence of a prisoner serving a term of imprisonment affected by the amendment 'may be reduced.'" *Id.* at 826. A court proceeding under § 3582(c)(2) does not "impose a new sentence in the usual sense." *Id.* at 827.  Instead, the court must   follow § 1B1.10's instructions in determining "eligibility," in what circumstances it may reduce a sentence, and "the extent of the reduction authorized." *Id.*

17

Cases applying Rule 35(a) or (b) likewise demonstrate that § 404 does require  a hearing. Rule 35(b) allows a court, [u]pon the government's motion," to "reduce a sentence if the defendant,after sentencing, provided substantial assistance in investigating or prosecuting another person." In contrast, Section 404 permits the court to "impose a reduced sentence as if" the Fair Sentencing Act "were in effect," and places no restriction on the factors a court may consider in imposing a reduced sentence. First Step Act of 2018, Pub. L. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). Rule 35(b) was amended effective December 1, 2007 to delete the requirement  that "reducing  the  sentence  accords  with  the  Sentencing  Commission's  guidelines  and  policy statements," in order to "conform[] Rule 35(b)(1) to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005)." Fed. R. Crim. P. 35, Advisory Committee Note (2007). The requirement was "deleted because it treat[ed] the guidelines as mandatory." *Id.*

Cases interpreting Rule 35(b) in the context of the extent of reduction are instructive.  "The use of 'may' in Rule 35 implies discretion, and discretion can best be exercised by considering the various sentencing factors," whether they "weigh in favor of a greater reduction [or] a smaller reduction." *United States v. Katsman,* 905 F.3d 672, 675 (2d Cir. 2018); *see also United States v. Tadio*, 663 F.3d 1042, 1047-48, 1051 (9th Cir. 2011) ("[T]he non-assistance factors of § 3553(a) properly guide a district court's exercise of its discretion in determining the extent of the reduction" under Rule 35(b), "irrespective of the direction in which those factors cut."). While some circuits read Rule 35(b)'s "substantial assistance" requirement to permit district courts to consider the § 3553(a) factors only to award a lesser reduction or no reduction, *see Tadio*, 663 F.3d at 1047 (describing other circuits' law), nothing in Section 404 limits the court's consideration of § 3553(a) factors.

Where a statute places no restriction on the factors a court may consider in imposing a reduced sentence, the court may consider all relevant § 3553(a) factors.  *See, e.g.*, *Pepper v. United*

*States*, 131 S. Ct. 1229, 1243, 1249 (2011) (post-sentencing developments, whether favorable or unfavorable to the defendant, bear directly on the court's duty to impose a reduced sentence that is sufficient, but not greater than necessary to serve the purposes of sentencing). In *Pepper*, the court found that there is no congressional policy to prohibit courts' consideration of post sentencing developments in any context, including "resentencings that occur for reasons other than" reversal on appeal, "e.g., when a sentence is set aside on collateral review." *Id.* at 1246. *See United States v. Bailey*, 777 F.3d 904, 906-08 (7th Cir. 2015) (holding proper vehicle for relief after *Dorsey* under the circumstances was § 2255, and there is "no bar" to the district court's consideration of any post-sentencing information.).

**B.      Motions filed pursuant to the First Step Act do not fall within the Rule 43 exception.**

Rule 43(b)(4) of the Federal Rules of Criminal Procedure, entitled "Sentence Correction," provides that a defendant "need not be present" when "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." But Rule 43's reference to proceedings "under" Rule 35 or § 3582(c) does not refer to proceedings which may result in a reduced sentence as "expressly permitted by statute."

First, there is a significant difference between § 3582(c)(2) – which authorizes defendants to file motions to reduce sentences based on retroactive guideline amendments – and § 3582(c)(1)(B), which does not expressly authorize anything. As such, proceedings which may result in the imposition of a reduced sentence "as expressly permitted by statute" is a proceeding "under" that statute, not under § 3582(c).

For example, a resentencing following a successful direct appeal, or following a successful collateral challenge, both constitute full resentencing proceedings that require the presence of a defendant. In other words, Rule 43(b)(4) does not apply to any imposition of a reduced sentence

that occurs by virtue of a statute described by 18 U.S.C. § 3582(c)(1)(B), such as resentencing after direct appeal or on collateral review. *See*, *e.g.*, *United States v. Brown*, 879 F.3d 1231, 1237- 41 (11th Cir. 2018) (§ 2255); *United States v. Arrous*, 320 F.3d 355, 357-60 (2d Cir. 2003) (direct appeal); *United States v. Faulks*, 201 F.3d 208, 210-12); *United States v. Moree*, 928 F.2d 654, 655-56 (5th Cir. 1991). Likewise, Rule 43(b)(4) was not meant to encompass any sentence reduction that occurs by virtue of a statute, such as the First Step Act, and thus is permitted by § 3582(c)(1)(B).

Second, any argument that a First Step Act motion does not require the presence of the defendant at a hearing pursuant to Rule 43(b)(4), because the motion constitutes a proceeding "under" 18 U.S.C. § 3582(c)(1)(B), renders the words "Rule 35" in Rule 43(b)(4) superfluous. That is because § 3582(c)(1)(B) authorizes courts to alter sentences as "expressly permitted by statute *or by Rule 35*". § 3582(c)(1)(B). If Rule 43(b)(4)'s reference to proceedings "under" Rule 35 or § 3582(c) was meant to include not only the paragraphs that explicitly authorize the filing of sentence reduction motions, but also any motion filed as "expressly permitted by statute *or by Rule 35*," then Rule 43(b)(4) would not have needed to expressly reference motions filed pursuant to Rule 35—because § 3582(c)(1)(B) *already includes Rule 35 motions*.

Accordingly, Rule 43(b)(4) applies only to proceedings that are authorized by § 3582(c) itself, that is, by § 3582(c)(1)(A) and (c)(2). Indeed, when the rule was amended in 1998 to add that the defendant's presence was not required at a proceeding involving a "correction or reduction of sentence under . . . 18 U.S.C. § 3582(c)," [9] it was limited to "resentencing hearings conducted under § 3582(c)(2) "as a result of retroactive changes to the Sentencing Guidelines by the United States Sentencing Commission," or § 3582(c)(1)(A) "as a result of a motion by the Bureau of

---

[9] Before 1998, it provided that a defendant "need not be present . . . when the proceeding involves a correction of sentence under Rule 35."

Prisons to reduce a sentence based on 'extraordinary and compelling reasons.'" Fed. R. Crim. P. 43, Advisory Committee Note (1998). Further, "a sentencing proceeding being conducted on remand by an appellate court" under statutes described by § 3582(c)(1)(B) "would continue to require the defendant's presence." *Id.* (citing *Moree, supra*).

In sum, motions to reduce sentences under the First Step Act are filed pursuant to § 404(b) of that statute, which triggers 18 U.S.C. § 3582(c)(1)(B) as the statutory mechanism for modifying the sentence, not 18 U.S.C. § 3582(c)(1)(A) or (c)(2). Therefore, hearings addressing First Step reduction motions "involve[] the correction or reduction of sentence under" the First Step Act, not under § 3582(c) generally. Motions brought under the First Step Act § 404 therefore do not fall under Rule 43(b)(4)'s exception to the requirement of a defendant's presence at resentencing.

**C.    Because a full resentencing hearing is authorized under the First Step Act, Mr. Walker has to be re-sentenced on all counts of conviction.**

At a resentencing hearing, this Court has to impose a total sentence. That entails resentencing Mr. Walker on all counts of conviction. Mr. Walker was sentenced under a statutory scheme that was deemed unfair and subsequently corrected by Congress through the passage of the First Step and Fair Sentencing Acts. With the passage of the First Step Act, Congress opened the door for courts to correct sentences that are unfair—like Mr. Walker's—including imposing a new sentence for his § 848 convictions.

As part of a resentencing (with or without a hearing), the Court should apply current law. The "general rule is that a defendant should be sentenced under the law in effect at the time of sentencing." *United States v. Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998). And when a court resentences a defendant, the court makes a new sentencing determination on a "clean slate."

*Krieger v. United States*, 842 F.3d 490, 505-06 (7th Cir. 2016). In addition, the "sentencing package doctrine" provides further support for resentencing on all counts. The sentencing package

doctrine is a "common judicial practice grounded in a basic notion" that "sentencing on multiple counts is an inherently related, interconnected, and holistic process which requires courts to craft an overall entence—the 'sentence package'—that reflects the guidelines and the   relevant § 3553(a) factors." *United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014). The presumption is that sentences on each count of a multi-count indictment are part of a "package" and that a successful attack on the sentence of some but not all counts unbundles that package, authorizing the district court to revisit the entire sentence. *Id.* at 1017; *see also United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) (because sentences are often interconnected, a full resentencing is typically appropriate when one or more convictions are vacated).

Under current law, Mr. Walker would no longer be subject to a mandatory Life sentence for Count 1, 16 or 18.  Nor would he be subject to a mandatory guideline sentence of life.

**Conclusion**

In sum, Mr. Walker is eligible for a reduced sentence pursuant to the First Step Act of 2018, and we respectfully request that the Court impose a reduced sentence. Based upon the foregoing, Mr. Walker is eligible for relief under the First Step Act of 2018, and a reduction in his sentence is consistent with the intention of the Congress to remedy the disproportionate impact of the draconian sentences applied to crack cocaine offenses prior to 2010. Therefore, Mr. Walker respectfully requests the Court to exercise its authority and reduce his sentence.

DATED:        September 6, 2019

Respectfully submitted,
Lisa A. Peebles
FEDERAL PUBLIC DEFENDER
Office of the Federal Public Defender, NDNY
BY: *Molly K. Corbett*
_____
Molly K. Corbett
Assistant Federal Public Defender
Bar Roll # 105740

22

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (ECF) to all parties of record.